UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

ANTHONY L. VIOLA,                    )        COMPLAINT FOR DECLARATORY JUDGMENT
                                     )        (28 U.S.C. §§ 2201, 2202)
        Plaintiff                    )
                                     )
-vs.-                                )        Case No.    2 20CV1627
                                     )
ATTORNEY GENERAL DAVE YOST, et. al., )        Hon:
                                     )
        Defendants                   )                   Judge Sargus

                                              MAGISTRATE JUDGE JOLSON

## NATURE OF THE ACTION

Plaintiff was tried two times by a multi-jurisdictional Task Force, established actual innocence at a second trial, yet remains in jail, prompting Judge Daniel Gaul, who presided over the second trial, to state that the Plaintiff is wrongfully incarcerated and that prosecutors committed "misconduct" in the criminal matters.  Each defendant named herein has an obligation under the Code of Federal Regulations or under the Rules of Professional Conduct to report misconduct to the proper authorities, yet none of these individuals has ever complied with their legal obligations, thereby injuring the Plaintiff.  This action seeks a declaratory judgment that each defendant must report misconduct detailed in this complaint.  Plaintiff alleges that the facts described in this complaint constitute an actual controversy between the parties and seeks a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, for the purpose of determining a question of actual controversy between the parties.

## SUMMARY OF THE CONTROVERSY BETWEEN THE PARTIES

Plaintiff Anthony L. Viola was simultaneously prosecuted in both state and federal court, on identical charges, by the same prosecution team, through a multi-jurisdictional Mortgage Fraud Task Force, funded by Bureau of Justice Assistance Grant # 2009-SC-B9-0080.  These prosecutions featured three indictments and two criminal trials, with opposite results.  Prosecutors alleged the undersigned devised the "Nation's Largest Mortgage Fraud Scheme" and duped lenders including JP Morgan Chase and Citigroup into making 'no money down' mortgage loans that did not meet the banks' underwriting guidelines. Following a federal conviction, Task Force Office Manager Dawn Pasela provided the Plaintiff with evidence federal prosecutors did not produce prior to the federal trial,

but relocated to the Task Force location instead, Exhibit A.

When substantially different evidence was introduced at the second trial, actual innocence was established, kindly compare USA v. Viola, 08-cr-506, N.D. Ohio, guilty verdict and 150 month prison sentence, with the acquittal two months later on the exact same charges, Ohio v. Viola, 10-cr-543886 and 10-cr-536877, Cuyahoga County Common Pleas Court. Judge Gaul has taken the extraordinary step of stating in writing that the Plaintiff is innocent, wrongfully incarcerated and that prosecutors committed "Misconduct," Exhibit B.

At the second trial, during post-conviction proceedings and as a result of investigations undertaken by the Plaintiff's private investigator, former FBI Agent Robert Friedrick, the Plaintiff has been able to document four major categories of government misconduct. The controversy between the Plaintiff and the named defendants centers on the failure of defendants to report misconduct to the Department of Justice's Office of the Inspector General, contrary to Section 45.11 of Title 28 of the Code of Federal Regulations, or the failure of the defendants to report misconduct to the Ohio Supreme Court Disciplinary Counsel pursuant to the Ohio Rules of Professional Conduct.

The Plaintiff's four claims of misconduct are as follows:

(1) PROSECUTORS POSSESSED PROOF OF THE PLAINTIFF'S INNOCENCE YET FAILED TO PROVIDE THAT EVIDENCE BEFORE EITHER CRIMINAL TRIAL -- Prosecutors shifted exculpatory evidence from the U.S. Attorney's Office in Cleveland to the Task Force location, including Bates Stamped federal evidence obtained pursuant to federal subpoenas and FBI 302 interview summaries, then pled ignorance to evidence at the Task Force. Prior to the second trial, the Task Force's Office Manager provided the undersigned with those FBI interviews and internal bank documents confirming that there was no "mortgage fraud." Rather, banks offered borrowers 'no money down' mortgage loans that did not require ANY representations about income or assets, and approved 'no money down, cash back' mortgage loans in writing and before closing for each of the 59 properties / counts in the indictment. Please see Exhibit C, attached hereto, for select documents proving the Plaintiff's innocence, along with written representations by prosecutors that the 302 from an interview with a lender executive did not exist, along with that 302 interview. That document disproved the government's "theory" that banks were duped into making loans that did not meet guidelines because the lender executive who testified at both trials said in his interview that lender employees were allowed to waive such conditions and approve these loans.

(2) INTRUSION INTO THE SIXTH AMENDMENT RIGHT TO COUNSEL -- Following the filing of federal and state indictments, but prior to the commencement of either criminal trial,

- 2 -

prosecutors directed Dawn Pasela, the Task Force's Office Manager, to post as a graduate student studying criminal defense and working with local defense attorneys defending similar cases.  Ms. Pasela shared helpful information with the Plaintiff and offered to assist our defense team.  Ms. Pasela recorded a series of post-indictment conversations with the undersigned so prosecutors could obtain confidential defense trial strategy information.  Ms. Pasela was also given funds to make donations toward defense legal fees so prosecutors could use her cancelled checks to identify the law firm's bank accounts and track investigative expenses before trial.  Later, Ms. Pasela felt what the government was doing was improper.  She provided key evidence, assisted the undersigned prepare for the second trial and offered to testify as a defense witness.  She was served with a valid defense subpoena signed by Judge Gaul, but when prosecutors saw Ms. Pasela's name on the defense witness list, she was threatened with "federal prison" if she appeared in court.  Shortly after her scheduled testimony, she was found dead in her apartment by her father yet no investigation into her death or the actions of prosecutors has ever taken place.  The Plaintiff is greatly honored that the Pasela family has joined my efforts to have the actions of prosecutors investigated, Exhibit D.

(3)  KNOWING USE OF PERJURED TESTIMONY TO OBTAIN A CONVICTION -- Prosecutors Dan Kasaris, Mark Bennett, John Siegel and Micah Ault knowingly utilized the perjured testimony of government witness Kathryn Clover, who informed her attorney, Jaye Schlachet, that she committed perjury at the Plaintiff's trial during the federal trial.  Mr. Schlachet contacted federal prosecutors and asked them to recall Ms. Clover so she could correct her false statements but prosecutors refused because doing so "jeopardized the outcome of the case ... [and] it served the best interests of justice to allow her testimony to remain unchanged," USA v. Clover, Case No. 10-cr-75, N.D. Ohio, Docket 29-1, page 8.  Despite being aware of Ms. Clover's perjury, these same prosecutors CONTINUED to use Ms. Clover as a government witness in additional grand jury and criminal proceedings without informing defendants that Ms. Clover committed perjury in federal court, see letter from Prosecutor Kasaris, Docket 29-1, p. 43-44.  Assistant U.S. Attorney Mark Bennett opposed Ms. Clover's request to have her supervised release terminated because "Clover provided false testimony during the trial," USA v. Clover, 10-cr-75, Docket # 46, page 2.  All documents referenced in this section are attached hereto as Exhibit E.

Multiple individuals, including Attorney Marcus Sidoti, government witness Lusas Fairfield, government informant Matt Fairfield and Clover's boyfriend Bryan Butler

have all alleged that Ms. Clover and Prosecutor Dan Kasaris had an inappropriate personal
or romantic relationship.  Mr. Kasaris -- who is also a councilman in the City of
North Royalton -- has faced political opponents in various city council races who
have conducted opposition research on Mr. Kasaris and also unearthed information concerning
Mr. Kasaris having a romantic relationship with Ms. Clover.  These allegations, all
of which have been relayed to the undersigned on an unsolicited basis, bolster the
claim that misconduct in the Plaintiff's criminal case must be investigated by proper
authorities.  Please see Exhibit F, attached hereto, for Ms. Clover's resume, which
claims she worked as an employee of the prosecutor's office while testifying as a
government witness, and one of many written statements about the Clover-Kasaris
relationship.

(4)  CONFLICTS OF INTEREST RESULTING FROM JOINT DEFENSE AT TRIAL DESPITE TIMELY OBJECTION
Prior to the federal trial, timely objections to conflicts of interest resulting from
joint defense between all defendants who proceeded to trial and the simultaneous repre-
sentation of government witness Kathryn Clover and lender employees, were filed,
USA v. Viola, 08-cr-506, N.D. Ohio, Docket # 110.  The Clerk of Court has confirmed
in writing that the district court never conducted any conflict of interest inquiry,
and that no conflict waivers were ever executed, and the government filed a document
stating that an actual of conflict of interest existed, USA v. Viola, 08-cr-506, N.D.
Ohio, Docket 201, page 18, Exhibit G.  Nevertheless, the undersigned remains in jail.

Further bolstering the Plaintiff's claims of misconduct is a letter recently
received from the Justice Department that states the government made material misrep-
resentations concerning evidence in the Plaintiff's criminal case, Exhibit H.

One additional source of controversy between the Plaintiff and the Defendants
is whether or not the Task Force was federally funded, or if state officials like
Mr. Kasaris or Special Assistant U.S. Attorney Micah Ault, are obligated to follow
the Code of Federal Regulations concerning reporting misconduct by DOJ employees.
Ohio Attorney General Attorney Christa Dimon filed an affidavit stating the Task Force
did not receive federal funds, while the Bureau of Justice Assistance says it funded
the Task Force with federal funds, and the FBI has issued press releases that it was
part of the Task Force, Exhibit I.

This litigation asks the Court to declare that each defendant, in their professional

- 4 -

capacity, is required to report the credible allegations of misconduct described herein to either the DOJ's Inspector General or the Ohio Supreme Court Office of Discipline Counsel and to further declare that all defendants named herein are required to follow the Code of Federal Regulations and the Rules of Professional Conduct.

THE PARTIES

PLAINTIFF:           Anthony L. Viola   ID # 32238-160
Lewisburg Federal Prison Camp
P.O. Box 2000
Lewisburg, PA  17837

DEFENDANTS:      (1)  Ohio Attorney General Dave Yost
30 East Broad Street
Columbus, Ohio  43215

                    (2)  Heather Buchanan
Ohio Attorney General's Office
30 East Broad Street
Columbus, Ohio  43215

                    (3)  Tiffany Carwile
Ohio Attorney General's Office
30 East Broad Street
Columbus, Ohio  43215

                    (4)  Special Assistant U.S. Attorney Micah Ault
c/o Office of the Ohio Attorney General
30 East Broad Street
Columbus, Ohio  43215

                    (5)  Daniel Kasaris, Senior Assistant Ohio Attorney General
11964 Beckenham Road
North Royalton, Ohio  44133

                    (6)  Justin Herdman
United States Attorney, N.D. Ohio
801 West Superior Avenue
4th Floor
Cleveland, Ohio  44113

                    (7)  Mark Bennett
Assistant U.S. Attorney
801 West Superior Avenue
4th Floor
Cleveland, Ohio  44113

(8)  Steven Dettelbach
     127 Key Tower
     Suite 2000
     Cleveland, Ohio  44114-1214

(9)  John Siegel
     127 Key Tower
     Suite 2000
     Cleveland, Ohio  44114-1214

(10) Michael O'Malley
     Cuyahoga County Prosecutor
     1200 Ontario Street
     Justice Center
     Cleveland, Ohio  44113

(11) Jaye Schlachet
     55 Public Square
     Suite 1300
     Cleveland, Ohio  44113-1971

(12) Marcus Sidoti
     50 Public Square
     Suite 1900
     Cleveland, Ohio  44113

(13) John Moustakas
     Assistant U.S. Attorney
     555 Fourth Street, NW
     Washington, DC  20530

(14) Laura S. Irwin
     Assistant U.S. Attorney
     700 Grant Street
     Suite 4000
     Pittsburg, PA  15219

## JURISDICTION AND VENUE

Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because the claims asserted in this action arise under the laws of the United States and the defendants named herein are required by law to perform duties owed pursuant to law, 28 U.S.C. § 1391. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district, including the formation of the Task Force and the Ohio Attorney General's decision to hire Ms. Pasela and assign attorneys to the U.S. Attorney's Office from the Ohio Attorney General's Office.

STANDING

This complaint seeks a declaratory judgment concerning a concrete controversy of parties having adverse legal interests.  The facts alleged are not hypothetical but proven, largely by the government's own documents.  The failure of the defendants to adhere to their lawful obligations to report misconduct has injured, and will continue to injure, the undersigned.  The Plaintiff's injuries include the large expense of conducting an investigation by a private investigator  and ongoing incarceration. The Plaintiff has a legally protected interest in the fair administration of justice and that licensed attorneys will follow the Rules of Professional Conduct and the Code of Federal Regulations.  Absent a declaratory judgment, the Plaintiff's injuries will continue.

### FACTS IN SUPPORT OF THE ISSUANCE OF A DECLARATORY JUDGMENT and CLAIM FOR RELIEF

(1)  Defendants Mark Bennett, Micah Ault, Dan Kasaris, and John Siegel prosecuted the undersigned, yet failed to report misconduct in the criminal proceedings.
(2)  Defendant Jaye Schlachet was aware that his client committed perjury in federal court, but merely accepted the decision of prosecutors to allow perjured testimony to stand.  This defendant had an obligation to report the prosecutors to the proper authorities.
(3)  Defendant Marcus Sidoti contacted the undersigned in federal prison on an unsolicited basis, informing him that his client Lucas Fairfield saw Prosecutor Kasaris at a Cleveland Indians baseball game with Kathryn Clover.  Mr. Sidoti also stated, on a recorded phone call, that Prosecutor Kasaris and Ms. Clover sometimes left the prosecutor's office to meet at local hotels, then returned to the office to continue working on cases together, but this defendant never reported this information to the appropriate authorities.
(4)  Defendants Michael O'Malley, David Yost, Steven Dettelbach and Justin Herdman all have obligations as supervisory officials who oversee prosecutors.  These individuals have also failed to report misconduct to the proper authorities despite being made aware of obvious wrongdoing.  Mr. Dettelbach even wrote the undersigned a letter refusing to report the death of Dawn Pasela to the Inspector General, Exhibit J.
(5)  Defendants Laura Irwin and John Moustakas are employed by the Department of Justice and have contested claims in litigation filed by the Plaintiff.  Despite being fully

aware that their colleagues in Cleveland committed misconduct, these defendants have refused to follow the Code of Federal Regulations and report misconduct to the Inspector General.

(6)   Prosecutors Daniel Kasaris, Mark Bennett, Micah Ault and John Siegel have an ongoing duty to correct the wrongful imprisonment of an innocent American citizen, but have failed to adhere to this lawful obligation.

(7)   Defendants Heather Buchanan and Tiffany Carwile have also been made aware of improper actions by Prosecutor Daniel Kasaris but have defended his actions in court, despite a prohibition on the Ohio Attorney General defending the non-official actions of employees of that office.  Similarly, these defendants have failed to report Mr. Kasaris' misconduct to the proper authorities.

(8)   Not only do the Plaintiff and all defendants have adverse legal interests, each of the defendants have an ongoing obligation to correct a wrongful conviction and/or report misconduct.  The failure of each of these defendants to follow their lawful obligations has injured the undersigned.

(9)   Concrete injuries suffered by the Plaintiff include:  (a)  Ongoing expenses to fund an investigation of the facts in this case; (b)  The Continued incarceration of an individual who proved actual innocence at trial but who has never been given any evidentiary hearing to present this same proof of innocence utilized at the second trial;  (c)  The Plaintiff is not the proper person to investigate Mr. Kasaris' relationship with Kathryn Clover or the death of Dawn Pasela.  These matters should be investigated by the Department of Justice Office of the Inspector General.

(10)   The Plaintiff is entitled to this Court's declaration, pursuant to 28 U.S.C. § 2201 and 2202 that:

     a.  Plaintiff has a right to demand compliance with the Code  of Federal Regulations and the Ohio Rules of Professional Conduct;

     b.  The Defendants are in breach of those obligations; and

     c.  The Defendants are obligated to report misconduct to the appropriate authorities.

(11)   This Court has the power to declare the legal rights and relations between the parties to this action.  A declaratory judgment will terminate the controversy between the parties and resolve the dispute about the defendants' obligation to report misconduct to the proper authorities.

- 8 -

## STATEMENT OF LAW

Part One:  Defendants have a duty to report misconduct -- Section 45.11 of the Code
of Federal Regulations imposes a duty on Department of Justice employees to report
allegations of "criminal or serious administrative misconduct" to the DOJ's Office
of the Inspector General, or to their supervisor or internal affairs for referral
to OIG. Section 45.12 imposes a duty on DOJ employees to report to the Office of Professional
Responsibility (OPR) allegations of misconduct by a DOJ attorney or "law enforcement
personnel when such allegations are related to allegations of attorney misconduct.
Defendants Yost, O'Malley, Dettelbach and Herdman have additional responsibilities
as supervisors of prosecutors:  they must immediately report -- not cover up -- misconduct
by their employees, American Bar Association Committee on Ethics and Professional
Responsibility Formal Opinion 14-467 (2014); also see National Prosecution Standard
1-1.6 "Duty to report misconduct," National District Attorney's Association.

   Likewise, Defendants Bennett, Kasaris, Moustakas, Irwin, Carwile and Buchanan
have an affirmative duty to report on prosecutorial misconduct cited by Judge Gaul.
The aforementioned "Duty to Report" states that "A prosecutor's failure to report
known misconduct may itself constitute a violation of the prosecutor's professional
duties." The American Bar Association Standards for Criminal Justice likewise acknowledge
that prosecutors have a duty of disclosure beyond the constitutional obligation, ABA
Committee on Ethics and Professional Responsibility Formal Opinion 09-454 (2009).

   The United States Attorney's Manual further requires full disclosure of evidence
in criminal trials beyond the constitutional guarantees, and states that prosecutors
have ongoing duties to produce evidence casting doubt on convictions, USAM § 9-5.001C.

   Defense attorneys Sidoti and Schlachet are also under an obligation to report
the use of perjured testimony and information concerning an improper personal relationshiop
between Prosecutor Kasaris and Kathryn Clover to the Ohio Supreme Court, see Rule
8.3(a), "Reporting Professional Misconduct" which provides that "A lawyer who knows
that another lawyer has committed a violation of the Rules of Professional Conduct
that raises a substantial question as to that lawyer's honesty, trustworthiness or
fitness as a lawyer in other respects, shall inform the appropriate professional authorities,"
emphasis added.

   In December, 2013, the Ohio Supreme Court issued conduct guidelines for prosecutors
and defense attorneys.  These guidelines, titled The Professionalism Dos and Don'ts:
Conduct of Prosecutors and Defense Attorneys, states that "the integrity of our criminal
justice system depends a great deal on the professionalism of the lawyers who prosecute
the cases and the lawyers who defend the accused."

These guidelines make clear that licensed attorneys must administer justice fairly and not engage in underhanded tactics to "win" a case. In addition, the Supreme Court of Ohio's Board of Commissioners on Grievances & Discipline Advisory Opinion 2016-2 states, "A lawyer has a duty to report unprivileged knowledge of another lawyer's misconduct" under Rule 8.3. Taken together, multiple controlling legal authorities require attorneys to report misconduct in a criminal case, and no legal authority allows misconduct to go unreported.

Part Two:  The Ohio Attorney General Violated the Ohio Revised Code When Defending Dan Kasaris -- Friends and supporters of the Plaintiff do not understand how an individual can prove their innocence at trial yet remain in jail and decided to start a web site about the Plaintiff's criminal cases: **FreeTonyViola**.com. Originally created to solicit leads for the investigative team, the site evolved into a tool to keep the public informed about critical developments and to share information that could potentially assist others who would benefit from dissemination of the exculpatory evidence the prosecutors never produced to over 1,000 defendants prosecuted by the Mortgage Fraud Task Force. But as soon as the web site, and a companion Facebook page, was launched, prosecutor Dan Kasaris threatened to prosecute the web team, citizens posting notes on the blog, and demanded that Facebook remove the fan page with over 5,000 followers, which they did. Plaintiff then filed a First Amendment suit against Mr. Kasaris, Anthony Viola v. Daniel Kasaris, Case No. 2:16-cv-1036, S.D. Ohio. In that litigation, Mr. Kasaris was represented by the Ohio Attorney General's Office, and Mr. Kasaris claimed he was only acting as a private citizen when he threatened to prosecute individuals or speaking with Facebook. But the State of Ohio and its taxpayers should not have paid for this defense, because Mr. Kasaris' claimed to be acting in his personal capacity. Defendants Carwile and Buchanan violated Ohio Revised Code 109.36, "Defense of Officers and Employees" by defending Mr. Kasaris, then violated the Rules of Professional Conduct by not referring misconduct to the appropriate authorities.

Part Three:  Plaintiff's Claims of Misconduct and Innocence are Grounded in Law and Sufficiently Credible to Trigger a Duty to Report Misconduct -- Federal prosecutors Bennett, Siegel, Ault and Kasaris suppressed evidence proving the Plaintiff's innocence. The materiality of this Brady violation is not a matter of speculation or conjecture because, at a second trial, a jury acquitted the Plaintiff on the exact same charges at issue in the first trial, Brady v. Maryland, 373 U.S. 83 (1963).

The knowing use of Kathryn Clover's perjured testimony and the failure to correct false testimony violates the constitutional guarantee of due process of law, Napue

v. Illinois, 360 U.S. 264 (1959).

Prosecutors Kasaris, Bennett, Ault and Siegel were not permitted to invade the Plaintiff's Sixth Amendment right to counsel to obtain confidential defense trial strategy information, Massiah v. United States, 377 U.S. 201 (1964); United States v. Levy, 577 F.2d 200 (3d Cir. 1979).

When a trial court ignores timely objection to conflicts from joint defense at trial, any subsequent conviction is subject to automatic reversal, Holloway v. Arkansas, 435 U.S. 475, 489-92 (1978).

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

(1)  Declare the rights and legal relations of the parties to the subject matter here in controversy, particularly with respect to the proper applicability and proper inter- pretation of the Code of Federal Regulations and the Rules of Professional Conduct;

(2)  Declare that the misconduct described herein constitute sufficiently credible evidence of misconduct to trigger duties to report this misconduct to the proper authorities; and

(3)  For any additional relief this Court finds proper.

Thank you very much for reviewing this complaint.

Respectfully Submitted,

Anthony L. Viola # 32238-160
Lewisburg Federal Prison Camp
P.O. Box 2000
Lewisburg, PA  16701

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription  04/06/2010

b6
b7C

On April 6, 2010, at 3:35pm, Special Agent [_____] accepted a box of documents which were being held at the United States Attorney's Office. The documents were originally provided by [_____] to Special Agent [_____] of Alcohol Tobacco and Firearms (ATF).

At 4:04 pm, SA [_____] delivered these documents to the Cuyahoga County Mortgage Fraud Task Force, for scanning and to be turned over for evidence.

b6
b7C

On March 16, 2010, these documents were brought to a meeting held at the United States Attorney's Office. Present at the meeting were SA [_____] and [_____] of the ATF, SA [_____] and Assistant United States Attorney [_____] The documents were placed in storage at the conclusion of this meeting.

b6
b7C

The documents turned over to the MFTF included [_____]

b6
b7C

Investigation on  04/06/2010  at  Cleveland, Ohio

File #  329E-CV-71645- 179                    Date dictated _____

by  SA _____

b6
b7C

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

EXHIBIT A



THE COURT OF COMMON PLEAS

COUNTY OF CUYAHOGA

JUSTICE CENTER

1200 ONTARIO STREET

CLEVELAND, OHIO 44113

DANIEL GAUL
Judge
(216) 443-8706

February 17, 2017

Anthony L. Viola - ID #32238-160
McKean Federal Correctional Institution
P.O. Box 8000
Bradford, PA 16701

Dear Tony:

I hope you are as well as a person can be in federal prison.

Just thought I would write to express my feelings of regret on your continued incarceration. I had hoped that your exoneration in my courtroom would have assisted you in overturning your federal conviction.

In any case, I am writing to inform you that there is a newly elected Cuyahoga County Prosecutor. His name is Mike O'Malley. His office may be willing to take a fresh look at Daniel Kasaris' misconduct in your case. If Kasaris participated in your federal case, O'Malley's office may be able to intervene, or at least support a post-release remedy before Judge Nugent.

Anyway, this is just a thought. Please let me know if I may assist you in any way.

I regard you as an extremely decent man and I do hope you will have your conviction overturned.

Sincerely,

Daniel Gaul
Judge

DG/mtl

exhibit B

RE: Newcomb 302 request from Tony Viola                                    Page 1 of 1



**From:** Bennett, Mark (USAOHN) (USAOHN) <Mark.Bennett2@usdoj.gov>
    **To:** tonytopaz <tonytopaz@aol.com>
    **Cc:** Daniel Kasaris (p4dxk@cuyahogacounty.us) <p4dxk@cuyahogacounty.us>
**Subject:** RE: Newcomb 302 request from Tony Viola
    **Date:** Sun, Apr 8, 2012 8:45 pm

I have checked the system and do not have a 302 for Mr. Newcombe. I have inquired with the agents and other AUSAs on the case to see if one was created and they can provide. I will not be in the office next week. But they can respond directly to Mr. Kasaris.

Mark S. Bennett
Assistant United States Attorney
801 W. Superior Ave., Suite 400
Cleveland, Ohio 44113
216.622.3878 (direct)
216.522.2403 (fax)
mark.bennett@usdoj.gov

**From:** tonytopaz@aol.com [mailto:tonytopaz@aol.com]
**Sent:** Sunday, April 08, 2012 6:20 PM
**To:** Bennett, Mark (USAOHN)
**Subject:** Re: Newcomb 302 request from Tony Viola

Mr. Kasaris says he does not have Mr. Newcomb's 302, if possible, kindly reforward that, thank you.

Tony

-----Original Message-----
From: 'Bennett, Mark (USAOHN) (USAOHN) <Mark.Bennett2@usdoj.gov>
To: 'tonytopaz@aol.com' <tonytopaz@aol.com>; 'dkasaris@cuyahogacounty.us' <dkasaris@cuyahogacounty.us>
Sent: Sun, Apr 8, 2012 10:31 am
Subject: Re: Newcomb 302 request from Tony Viola

**Mr. Viola,**

I have provided those to Mr. Kasaris. I am sure he will provide pursuant to local rule and the Court's trial order.

Mark Bennett

**From:** tonytopaz@aol.com [mailto:tonytopaz@aol.com]
**Sent:** Saturday, April 07, 2012 03:47 PM
**To:** Bennett, Mark (USAOHN); dkasaris@cuyahogacounty.us <dkasaris@cuyahogacounty.us>
**Subject:** Newcomb 302 request from Tony Viola

Mr Bennett - I am respectfully requesting that you e mail me a copy of the Argent witness, Mr. Steve Newcomb, his 302 statement summary. He testified on direct exam on Friday and will resume this coming week. Thank you.

Tony Viola

EXHIBT C-01

Page 1 of 2

and this was my response to mark.
I do not have any newcomb 302



dan

Daniel J. Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

Attached Message
From:    Daniel Kasaris <dkasaris@cuyahogacounty.us>
To:      Mark (USAOHN) Bennett <Mark.Bennett2@usdoj.gov>
Cc:      Jeffrey P. (FBI) Kassouf <Jeffrey.Kassouf@ic.fbi.gov>; John (USAOHN) Siegel <John.Siegel@usdoj.gov>
Subject: Re: Viola - 302s of lender, Rich and Calo
Date:    Sun, 08 Apr 2012 12:56:01 -0400

mark
this is what you sent
I do not have a 302 for steve newcomb
thx
dan

Daniel J. Kasaris
Assistant County Prosecutor
Cuyahoga County, Ohio
1200 Ontario ST. 9th Floor
216-443-7863
216-698-2270 (fax)

>>> "Bennett, Mark (USAOHN)" <Mark.Bennett2@usdoj.gov> 2/29/2012 5:25 PM >>>
Dan,

I have not found the interview of Steve Newcomb from Argent, but you probably already have that one.  In
addition, please be advised that we have put all of our trial exhibits on a disk and will send that disk, along
with the Colley disk out tomorrow.

Thanks,
Mark

P.S.  I also included a summary of our interview of Viola.  I also have his typed letter to me with all of the
attachments from early on where he admitted to the fact he should have realized these deals were
questionable.  Let me know if you want that.

Mark S. Bennett
Assistant United States Attorney
801 W. Superior Ave., Suite 400
Cleveland, Ohio 44113
216.622.3878 (direct)
216.522.2403 (fax)
mark.bennett2@usdoj.gov

EXHIBIT C - P2

FD-302 (Rev. 10-6-95)

- 1 -

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    02/22/2011

    On February 18, 2011, SCOTT NEWCOMBE, was telephonically interviewed, by Forensic Accountant Ron Saunders, Special Agent Jeffrey Kassouf and Special Assistant United States Attorney Micah Ault, after being advised of the nature of the interview and the identity of the interviewing personnel, NEWCOMBE provided the following information:

    NEWCOMBE worked at ARGENT MORTGAGE, and transferred over to Citigroup Global once Argent was sold to Citigroup.  NEWCOMBE is involved in ACC Capital as they wind down Argent.

    Argent was a loan originator.

    During the years 2005-2006 Argent processed a significant number of loans.

    Argent required the borrower provide a down payment, which was generally provided through a cashiers check.

    Argent had a stated loan program.  These loans were typically higher risk, so they carried a higher interest rate on the loan.  In the stated income loan program, the borrower states their income on the loan application, also known as a 1003.  Argent required the borrower to sign a certification or letter as to their income.

    Argent originated their loans through mortgage brokers. The mortgage brokers were required to go through an approval process before Argent would accept any loans.

    The loans were assigned to the underwriting department if the loan met the underwriting guidelines a conditional loan approval with various terms was issued.

    Final approval on the loan would be issued after the loan conditions were met.

    Argent would send various loan documents to the title company to be signed at closing.  Once the title company closed the loan and completed the documents, they would send the completed

---

Investigation on    02/18/2011    at  Cleveland, Oh

File #  329A-CV-71645                          Date dictated

by   SA Jeffrey P. Kassouf

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

Exhibit C - 03

FD-302a (Rev. 10-6-95)

329A-CV-71645

Continuation of FD-302 of ___ SCOTT NEWCOMBE _____ . On 02/18/2011 . Page 2 ___

documents back to Argent. Once this was done Argent would fund the loan.

The account executive, was the sales representative in the field who dealt with the mortgage brokers.

The account manager oversaw the underwriter and funding processes.

Underwriting approved the loans, if there were any exceptions or conditions not met the account manager could override or waive a condition, if it made good business sense.

It was important to underwriting to pull the borrower's credit report. The credit score drove the loan process.

The borrower's income was important to assess the risk of repayment.

A debt to income ratio was calculated based upon the income provided in the 1003.

Purchase loans required proof of the down payment.

The appraisal was required to be done by a disinterested third party.

The appraiser dealt with the mortgage broker, who submitted the appraisal report to Argent. Once received the appraisal would be sent for a desk review. If any followup by the desk review was needed they could call the appraiser.

The Account Manager and Underwriter placed heavy reliance that the 1003 was completed accurately and truthfully.

If the borrower was self employed a third party letter from a Certified Public Accountant was needed.

Argent required 5% of the down payment must be from the borrowers own funds, regardless of the Loan to Value.

Gift funds had to come from an immediate family member. If a gift was provided a gift letter was required, stating the funds were given truly as a gift and no repayment was required.

exhibit C- 84

D-302a (Rev. 10-6-95)

329A-CV-71645

Continuation of FD-302 of    SCOTT NEWCOMBE                            , On 02/18/2011  , Page    3

      Argent did not accept third party down payments from a down payment provider.

      Argent accepted seller second mortgages, also known as seller carry backs. The loan contract stating the terms and conditions was required to be provided to Argent. If a seller second was entered into Argent expected this was a legitimate transaction which would be repaid.

      At one point Argent allowed only the buyer HUD Settlement Statement, however, their policy switched to requiring both the buyer and seller side. Argent switched this policy when it was discovered unauthorized third party disbursements were being made on the loans.

      Closing costs were based upon the purchase agreement. The closing costs were capped at a certain percentage. Therefore the seller could only provide a certain maximum percentage.

      Any money going to the buyer would need to be disclosed to Argent.

exhibit C- p5

### Argent Mortgage Company
## BORROWER'S DISBURSEMENT AUTHORIZATION

| | |
|---|---|
| SETTLEMENT /CLOSING AGENT<br>FAMILY TITLE SERVICES, INC.<br>35401 EUCLID AVENUE, SUITE 215<br><br>WILLOUGHBY, OH 44094 | BORROWER(S)<br>KATHRYN CLOVER |
| PROPERTY ADDRESS<br>1389 RUSSELL AVENUE, CLEVELAND, OH 44103 | SELLER(S) |

| | |
|---|---|
| CLOSING DATE 05/31/2005  FUNDING DATE 05/31/2005 | LEGAL DESCRIPTION<br>LEGAL DESCRIPTION ATTACHED HERETO AND MADE A<br>PART HEREOF: |
| LOAN NUMBER  0079449831 - 9705 | |
| LOAN PURPOSE  Purchase | |

FROM: Argent Mortgage Company, LLC -  Division 03 - Reg 05 Sales  PHONE NO. (800)369-5117  FAX
FUNDING CONTACT:

**INSTRUCTIONS TO SETTLEMENT/CLOSING AGENT:**
BELOW IS A LIST OF ALL SETTLEMENT CHARGES AND DISBURSEMENTS APPLICABLE TO THIS LOAN. YOU MUST USE
THESE FIGURES TO PREPARE YOUR SETTLEMENT STATEMENT. YOU CANNOT DEVIATE FROM THESE FIGURES
WITHOUT PRIOR WRITTEN AUTHORIZATION FROM Denise Obrock. ANY AMOUNTS MARKED WITH AN " * " ARE
PREPAID FINANCE CHARGES AND CANNOT BE INCREASED OR ADDED ONCE LOAN DOCUMENTS HAVE BEEN
PREPARED UNLESS NEW LOAN DOCUMENTS ARE GENERATED.

## Settlement Charges

LOAN AMOUNT:  $    72,000.00

| Item Payable | Pay to | | Paid Outside of Closing (POC) | Paid by Borrower | Paid by Lender | Paid by Seller | Total Amount Paid |
|---|---|---|---|---|---|---|---|
| Underwriting Fee to Lender | Argent Mortgage Company, LLC | | $0.00 | $550.00 | $0.00 | $0.00 | $550.00 * |
| Interest 1 days @ 18.64 | Argent Mortgage Company, LLC | | $0.00 | $18.64 | $0.00 | $0.00 | $18.64 * |
| Premium Yield Adjustment 2.000% | Central National Mortgage | (W) | - | $0.00 | $1,440.00 | $0.00 | $1,440.00 |
| Origination Fee to Broker  2.000% | Central National Mortgage | (W) | $0.00 | $1,440.00 | $0.00 | $0.00 | $1,440.00 * |
| Processing Fee to Broker | CENTRAL NATIONAL | (W) | $0.00 | $150.00 | $0.00 | $0.00 | $150.00 * |
| Appraisal Fee | G.I.S. & ASSOCIATES, INC. | (W) | $0.00 | $425.00 | $0.00 | $0.00 | $425.00 |
| Tax Related Service Fee | Argent Mortgage Company, LLC | | $0.00 | $70.00 | $0.00 | $0.00 | $70.00 - * |
| Flood Search Fee | Argent Mortgage Company, LLC | | $0.00 | $9.00 | $0.00 | $0.00 | $9.00 * |
| Hazard Insurance Premium | INSURANCE OFFICE OF | (W) | - | $742.87 | $0.00 | $0.00 | $742.87 |
| Closing/Remote Close/Trip Fee | FAMILY TITLE SERVICES, | (W) | $0.00 | $450.00 | $0.00 | $0.00 | $450.00 * |
| Title Ins/Endorsements/Survey | FAMILY TITLE SERVICES, | (W) | $0.00 | $330.00 | $0.00 | $0.00 | $330.00 |
| Recording/Recording | FAMILY TITLE SERVICES, | (W) | $0.00 | $200.00 | $0.00 | $0.00 | $200.00 |
| Courier/Wire/E-Mail Fee | FAMILY TITLE SERVICE | (W) | $0.00 | $115.00 | $0.00 | $0.00 | $115.00 * |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | TOTAL CHARGES | | $5,940.51 |

## ESCROW ACCOUNTS

| | Annual Amount | Monthly Amount | Number of Months | Total Charge |
|---|---|---|---|---|
| TAXES | $0.00 | $0.00 | 0 | $0.00 |
| HAZARD INSURANCE | $0.00 | $0.00 | 0 | $0.00 |
| FLOOD INSURANCE | $0.00 | $0.00 | 0 | $0.00 |
| EARTHQUAKE INSURANCE | $0.00 | $0.00 | 0 | $0.00 |
| WINDSTORM INSURANCE | $0.00 | $0.00 | 0 | $0.00 |
| | | | INITIAL DEPOSIT | $0.00 |

BORRDISB (09/04)                                            FT00167

EXHIBIT  C - 06

## ...rgent Mortgage Company,
### BORROWER'S DISBURSEMENT AUTHORIZATION

**Additional Disbursements to Others**

| Item Payable | Account Number | Balance | Total Amount Paid |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | TOTAL DISBURSEMENTS | |

**FUNDING INFORMATION**

| WIRE AMOUNT | |
|---|---|
| DEPOSIT(S) / EARNEST MONEY | |
| WAREHOUSE LINE | |
| CASH OUT | $12,500.51 |
| FUNDING CONTACT: | |

**BORROWER(S) AUTHORIZATION**

Argent Mortgage Company, LLC ("LENDER") IS HEREBY AUTHORIZED AND REQUESTED TO DISBURSE THE LOAN FUNDS TO THE SETTLEMENT/CLOSING AGENT TO BE APPLIED/DISBURSED IN ACCORDANCE WITH AND AS SHOWN IN THIS AUTHORIZATION. IT IS UNDERSTOOD THAT THIS STATEMENT IS AN ESTIMATE ONLY AND IS AUTHORIZED TO MAKE ADJUSTMENTS TO THE FIGURES AS NECESSARY TO REFLECT CHANGES IN THE CLOSING/SETTLEMENT DATE OR TO REFLECT UPDATED PAYOFF AMOUNTS FOR ANY PRIOR LIENS OR ACCOUNTS TO BE SATISFIED WITH THEIR LOAN PROCEEDS.

Borrower KATHRYN CLOVER    Date 5/31/05

Borrower    Date

Borrower    Date

Borrower    Date

Borrower    Date

SETTLEMENT/CLOSING AGENT REPRESENTATIVE    Date 5-31-05
H... RD SIEFERD, Jr.

BORRDISB2 (09/04)    2 of 2    FT00168

EXHIBIT C-8

5407 Alber Ave
Parma, OH 44129
440.915.9207
dawn_pasela@hotmail.com

# Dawn Pasela

| | |
|---|---|
| **Professional Profile:** | Experienced professional manager of administration in a variety of environments. Office manager looking to continue a career in the security industry through investigations. Ambitious Law Enforcement/Information System student with success in coordinating career path with education. |

**History:**

**State of Ohio, Attorney General's Office – Mortgage Fraud Task Force**            2008-Present
*Office Manager*

- Direct communications between multiple agency task force members.
- Efficiently communicate with local, state and federal level agencies.
- Design and implement evidence receiving and recording system for documenting chain of custody.
- Convert files to electronic formats and filings for case preparation.
- Prepare cases' documents for trial.
- Design and maintain network of information for task force and deconfliction purposes.
- Evidence processing, including but not limited to receiving evidence, creating chain of custody, converting files for investigators, creating and maintaining case file evidence structure.

**Shooz**                                                                                              Beachwood, OH
*General Manager*                                                                                           2007

- Executed daily operations of financial reporting, employee files, store operations, loss prevention, document retention and reconciliations.
- Trained and managed 45 employees and achieved significant improvements in their productivity, margin and customer relations skills.
- Interpreted company policies to workers' and human resource regulations.
- Instructed computer courses on Microsoft applications and basic computer hardware operation.
- Working knowledge in SAP, ADP, IMS, POS, JDA, Kronos, Macros and Microsoft Excel, Word, Access, PowerPoint and Outlook.
- Conducted and assisted in both internal and external theft cases, check fraud and credit card disputes.

**CompUSA**                                                                                         Beachwood, OH
*Operations/HR Manager*                                                                          2004 - 2007

- Served as Training Department Coordinator for locations network maintenance, including class set-ups, software requirements, firewall setup, computer configuration, network setup (hardware and software) and computer trouble shooting.
- As Training Department Coordinator, instructed Microsoft Office Application courses to consumers and businesses, instructed employees on computer system use and services.
- Same responsibilities as General Manager of Shooz.

**Education:**            Cuyahoga Community College                              Parma Heights, OH
                          Associate – Law Enforcement                                    May 2009

**Language:**            American Sign Language
                          English Sign Language

**Volunteering:**        Youth Challenge                                                  1999-2003
                          St. Ignatius Soup Kitchen                                        2002-2004
                          Parma Animal Shelter                                             2008
                          Founder of Student Criminal Justice Club – Tri-C                2008

exhibit  D - 01

exhibit  D - p.2

822974

# DEFENSE SUBPOENA
(Criminal Rule 17)

RECEIVED FOR FILING
03/15/2012 08:34:26
GERALD E. FUERST, CLERK

| THE STATE OF OHIO | **PRECIPE** | | **DS 822974** |
|---|---|---|---|

Cuyahoga County

Case Number: CR-10- **543886** -A

To the Sheriff of Cuyahoga County:
You are hereby commanded to summon:
DAWN PASELA
5676 BROADVIEW ROAD APT. 201
CLEVELAND, OH 44134-0000

**JUDGE: DANIEL GAUL**
**ROOM: JC19D**

**Please Call Defense Attorney: JOHN B GIBBONS at (216) 363-6086 BEFORE Appearing**

<u>TO THE WITNESS</u>

YOU ARE HEREBY ordered to appear, under penalty of law, before the COURT OF COMMON PLEAS, held at the Courts Tower - Justice Center, Lakeside and Ontario Streets, in the City of Cleveland, within and for said County, **on the 21st day of March, 2012, at 09:00 o'clock A.M.**, to testify to all and singular such matters and things which you may know in a certain action in court pending, and then and there to be determined, between the STATE OF OHIO, plaintiff, and **ANTHONY L VIOLA (defendant 11873387)**, on the part of the DEFENSE.



WITNESS, GERALD E. FUERST, Clerk Court of Common Pleas, and the seal of said Court, as Cleveland, Ohio, this 15th day of March, A.D. 2012.

GERALD E. FUERST, Clerk

by _____

---

### FOR SHERIFF'S USE ONLY

**RETURN OF SUBPOENA:**

On , I served the within named for him, them, at their usual place of business or residence, a true and certified copy thereof with all endorsements therein .

| SHERIFF FEES | | | | |
|---|---|---|---|---|
| Service and Returns ........................ | $ | | | |
| Miles Traveled ............................. | $ | | CUYAHOGA COUNTY SHERIFF DEPT., Sheriff | |
| Total ....................................... | $ | | | |
| | | | | |
| | | | Deputy Sheriff | |

CMSN6062

exhibit D - p.3

## AFFIDAVIT OF EDWARD PASELA

STATE OF OHIO
COUNTY OF CUYAHOGA, SS:

I, Edward Pasela, depose and state under oath as follows:

1. I was the father of Dawn Pasela, who died on April 25, 2012.

2. For the last three years of her life, Dawn worked for the Cuyahoga County Mortgage Task Force, first as a contract employee and then as a county employee.

3. Dawn served in the capacity of office manager. One of her duties was to maintain the task force's files. After Dawn worked there for a while, she said she was concerned that things were being taken from the files and not returned. She also said some employees had signed her name when they took the files, and she feared they were hiding them from attorneys representing the people the task force was investigating. She particularly expressed concern about the way the cases against Anthony Viola and Susan Alt were being handled. Dawn showed us photos she had taken of file boxes haphazardly stacked in the hallway, which made them easily accessible to almost anyone.

4. Dawn also mentioned that some computers in the office had disappeared, and she couldn't find out why or where they went.

5. Although Dawn was not trained as an investigator, she was asked to go to a fund-raising event for Anthony Viola after he had been indicted and to secretly record what was said. She was also asked to write a check for Viola's defense fund so the prosecutors could determine at which bank the fund was being maintained. Dawn wondered about the propriety of these tactics.

6. Dawn continued to attend events sponsored by Viola's supporters and eventually began to sympathize with him because she felt that prosecutors were withholding documents that could help in his defense.

7. As her disenchantment over what was going on at the task force grew, Dawn began drinking excessively. This finally led to her termination. The task force later asked her to come in to discuss reinstatement, but she declined.

8. After the task force learned that Dawn had been subpoenaed to testify on Viola's behalf, two investigators came to her apartment to pressure her to reveal what Viola wanted her to testify about. She told us that the two men said that it would be wise for her to leave Ohio for a while and that if she testified for Viola she could end up in a federal prison. As a result, Dawn did not testify.

exhibit D - 0-4

9. Dawn was so frightened that the investigators might return that she moved into our house for 10 or more days and stopped drinking. She also parked her car in our garage so no one would see it. Dawn eventually began to feel stronger physically and emotionally and moved back to her apartment.

10. When we visited Dawn the day before she died, we could tell that she had started drinking again, and we urged her to stop.

11. Dawn was found dead the next day. The cause of death was listed as acute alcohol intoxication. She was only 26.


Further I sayeth naught.

*Edward Pasela*

Edward Pasela


Sworn and subscribed in my presence this _16th_ day of _December_, 20 _14_.

*[signature]*

NOTARY PUBLIC

PAUL VARGO
NOTARY PUBLIC
STATE OF OHIO
Recorded in
Cuyahoga County
My Comm. Exp. 1/25/17

PAUL VARGO
NOTARY PUBLIC
STATE OF OHIO
Recorded in
Cuyahoga County
My Comm. Exp. 1/25/17

EXHIBIT D-05

-2-

(2)     The issue of restitution still needs to be determined. However, the parties
        agreed in the written plea agreement that the loss caused to the lenders by
        Clover's fraudulent conduct exceeded $1 million. Accordingly, Clover will
        have a substantial restitution amount to pay, and her probation should be
        continued to allow the Court to oversee her restitution;

(3)     As this Court knows, Clover provided false testimony during the trial of this
        matter. Because of her false testimony, the government did not move for
        the full amount of 5K1.1 contemplated by the plea agreement and, as such,
        Clover's sentencing guideline range 15 to 21 months in Zone D, based on
        an offense level of 14 with a criminal history category of I. Accordingly,
        Clover should have been sentenced to a term of imprisonment. However,
        the Court granted defense's request for a further reduction of levels
        pursuant to 5K1.1 and placed Clover in a range and zone allowing for a
        sentence of probation. Clover has already been given an extremely
        favorable sentence and this Court should not give her the additional benefit
        of the early termination of her probation;

(4)     As part of her plea agreement, Clover was not prosecuted for her role in
        other mortgage fraud schemes, nor did the government request that this
        Court take into consideration at the time of sentencing her involvement in
        other mortgage fraud schemes as "other relevant" conduct, which would
        have greatly increased her guideline sentencing range. Clover has already

exhibit e - p 1

RE: Kathryn Clover                                                                                              Page 6
Docket No.: 1:10CR00075-003

who were men. Additionally, she feared the consequences of being subject to additional charges
if she disclosed everything she believed about the police report and didn't have any opportunity
to consult with her attorney about how to respond to such a question. She was apparently too
overwhelmed at the moment, even as a law student, to realize her fifth amendment right to refuse
to answer such a question on the grounds that it could incriminate her.

Following her lapse in judgment, Ms. Clover was able to realize that she needed the assistance of
her attorney. She and her attorney asked the prosecutors to recall her to testify again during the
trial. However, the prosecutors did not recall her since they reportedly believed that it
jeopardized the outcome of their case. If that is the case, then it would appear that the
prosecutors would also have felt that it served the best interests of justice to allow her testimony
to remain unchanged. Therefore, it would be difficult to imagine how she could be punished for
serving what the prosecutor believed was in the best interests of justice. It might be argued that,
if the best interests of justice were not served, she would not be the only one who would be
responsible.

In spite of the great emotional damage that she suffered, the psychological testing indicates that
her prognosis for recovery is good. Her youth, intelligence, verbal ability, insight, and motivation
for treatment favor a good treatment outcome. With regard to treatment interventions, she will
need cognitive-behavioral therapy to restructure her negative self-image and assertiveness
training to help her to develop more functional social relationships. Medications for anxiety,
depression, and mood stability will also help her recover and should be part of the treatment
plan. Abstinence from alcohol will also be necessary for her recovery. Now that she no longer
fears her husband, she is able to be truly open with a psychotherapist and needs a therapist who
will be warm and caring to provide her with a sense of nurturance that she never had. Such a
therapeutic relationship would also serve as a model for her to seek in other relationships, since
she has never really known what such a relationship is like. It will take years for her to recover,
but the ultimate outcome is favorable. If she is to remain an effective material witness, such
treatment should be required in order to prevent any future lapse in judgment. Treatment should
also be more frequent when she is subjected to cross-examination.

## Opinion

With reasonable psychological certainty, it can be stated that:

1. Ms. Kathryn Clover has severe mental disorders of: Posttraumatic Stress Disorder, Chronic;
   Major Depressive Disorder, Recurrent, Moderate Severity, Chronic; Generalized Anxiety
   Disorder; Alcohol Dependence, in Early Full Remission; and Borderline Personality
   Disorder, with Dependent and Histrionic Traits.

exhibit e - p2



## Bill Mason
### CUYAHOGA COUNTY PROSECUTOR

Jaye M. Schlachet, Esq.
The Law Office of Jaye M. Schlachet
55 Public Square, Suite 1600
Cleveland, Ohio 44113

September 16, 2011

Re: U.S. Government v. Kathryn Clover

Dear Attorney Schlachet:

I have been informed that Kathryn Clover's sentencing date in the United States District Court for the Northern District of Ohio has been scheduled by the Honorable Judge Don Nugent for September 28, 2011. I am writing you concerning the sentencing date.

As you know you're at the present time is heavily involved in assisting the State of Ohio in several "Mortgage Fraud" investigations and pending cases. She is scheduled to testify on or about October 17, 2011 in the State of Ohio v. Turner Nash in the Courtroom of Daniel Gaul. In addition at the present time she is assisting the State Government in the investigation of top Argent executives who may have been responsible for committing fraud in the selling of mortgage backed securities to investors, and others who may have participated in the tampering with internal Argent loan documents. Her work as already lead to the indictment of several former Argent employees for tampering with these internal loan documents, thereby allowing at least 100 loans to be approved when the approval was contrary to Argent's stated guidelines. She has already testified before a State Grand Jury in that matter and more Grand jury testimony is expected. Moreover, she is also working with State Government Prosecutors in investigating two mortgage brokers and a title company of dubious repute who it appears was closing deals with two huds (and I am not referring to Family Title).

Given the above and on behalf of the State of Ohio and at your request the State Government is requesting that her sentencing be continued until at least the middle of November so that the above matters may be concluded.

### OFFICE OF THE PROSECUTING ATTORNEY
The Justice Center • Courts Tower • 1200 Ontario Street • Cleveland, Ohio 44113
(216) 443-7800 • Fax (216) 443-7601 • Email: prosecutor@cuyahogacounty.us
www.prosecutormason.com

Exhibit e - 83

Sincerely

Daniel J. Kasaris
Assistant County Prosecutor
Supervisor Mortgage Fraud Unit
Cuyahoga County, Ohio
1200 Ontario ST, 9th Floor
216-443-7863
216-698-2270 (fax)

exhibit c - 04

Resumes

Kathryn Clover - Lakewood, OH
Work
Company: Neighborhood progress inc     May 2012 to 2000
Legal intern

Company: Housing advocates inc - Cleveland, OH     May 2011 to Oct 2012
Senior law clerk

Company: Cuyahoga county prosecutor's office - Cleveland, OH     Mar 2010 to May
Such investigation lead to the indictments and convictions

Company: Chateau management investments - Cleveland, OH     Feb 2005 to Aug 2
Owner and partner

Education
School: Marshall College Of Law, Cleveland State University - Cleveland, OH     Jul
J.d.

Hide details
PHONES & ADDRESSES
Name     Address          Phone
Kathryn K Clover          206 Springwood Dr, Oxford, OH 45056   (513) 523-4470
Kathryn Clover  13935 Lake Ave, Lakewood, OH 44107  (216) 221-5955
Kathryn E Clover          2750 Fair, Lancaster, OH 43130 (740) 653-9079
Kathryn E Clover          2750 Fair Ave, Lancaster, OH 43130     (740) 653-9079
Kathryn K Clover          3233 Dellwood Rd, Cleveland, OH 44118          (216) 320-
Kathryn E Clover          435 Eastwood Ave, Lancaster, OH 43130          (740) 653-
Kathryn Clover  517 Herbert Pl Nw, Canton, OH 44703
Kathryn Clover  1093 Norka St, Akron, OH 44307
Kathryn Clover  717 Sylvan Ct Ne, Canton, OH 44704
Kathryn Clover  1512 2Nd St Se, Canton, OH 44707
Kathryn K Clover          4236 Riggs Rd, Oxford, OH 45056
Kathryn Clover  202 Young Ave Se, Canton, OH 44707
Kathryn Clover  206 Springwood Dr, Oxford, OH 45056   (513) 284-****
ORGANIZATIONS
Name / Title     Company / Classification          Phones & Addresses
Kathryn Clover  REINE MODEL MANAGEMENT LLC
Kathryn Clover  CHATEAU MANAGEMENT LLC
Kathryn K Clover          MKM TALENT GROUP, LTD
Kathryn Clover  CHATEAU MANAGEMENT INVESTMENTS LLC
SOCIAL NETWORKS
GooglePlus


Kathryn K Clover age ~36
Lived in: Oxford, OH, Westlake, OH, Cleveland, OH, Lakewood, OH, Olmsted Falls,

exhibit (F)

TRULINCS

-------------------------------------------------------------------------------

FROM: Feldman, Debbie
TO: 23618055
SUBJECT: more from FB
DATE: 04/07/2016 11:36:07 PM

I was with Kat Clover.. I have knowledge of things she told me.. if I can help you let me know
And yes they slept together.. they were sleeping together when he prosecuted her ex husband..
Bryan Butler
Bryan
She told me a lot of stuff
I want to help you


## TRULINCS  32238160 - VIOLA, ANTHONY L – Unit: MCK-E-A

-------------------------------------------------------------------------------


>

3:13pm
Bryan Butler
Yes absolutely.. 513 557 1903


## TRULINCS  32238160 - VIOLA, ANTHONY L – Unit: MCK-E-A

-------------------------------------------------------------------------------

FROM:
TO: 32238160
SUBJECT: RE: Bryan's phone number
DATE: 04/10/2016 12:06:06 AM

Bryan Butler I was recently dating Kat Clover and yes she told me that her and Dan had been sleeping together since the trial
where he prosecuted her ex husband Matt
Like · Reply · April 7 at 6:30pm

exhibit - P2



**Bryan Butler**
I was recently dating Kat Clover and yes she told me that her and Dan had been sleeping together since the trial where he prosecuted her ex husband Matt

Apr 7 at 6:30 PM • Like • Reply



Bryan, I sent you a msg on your Facebook page, tony would love to talk to you directly, please chk your msg's thanks! 😁

Apr 8 at 3:08 PM • Like • Reply

 Write a comment...



I was going through screen shots..literally 10,000 records and found this one..thought I would send it to you and me to place in a file.

Trying to get organized...:)

Sent from Yahoo Mail on Android

exhibit f - p 3

witness' prior drug use would certainly be more than reasonable, and in turn eliminate the risk of unfair prejudice to the United States.

For the reasons set forth above, the United States respectfully requests that the Court preclude the introduction at trial of any evidence or argument, or cross-examination on the subject of any witnesses' prior drug use.

In the alternative, the United States requests a voir dire hearing, outside the presence of the jury, to establish what effect, if any, a witness' prior drug use has on his/her ability to recall relevant events.

**F.    Conflict of Interest Issue**

On March 25, 2010, the United States filed its Motion for Conflict of Interest Inquiry (Doc. #110) under seal with this Court. Because the motion was filed under seal, the United States will not detail the issue in its trial brief. However, it is the position of the United States that the conflict of interest still remains and reiterates its requested remedy.

**G.    Bifurcated Trial**

Because the Superseding Indictment includes forfeiture counts, the United States anticipates that the trial will be bifurcated into the guilt and forfeiture phases. The United States will be seeking money judgments against each of the Defendants. The determination of the amount of the money judgments is an issue for the Court to determine, and not for jury determination. With respect to the forfeiture, see the United States' Bill of Particulars regarding forfeiture previously filed.

exhibit g - 01

Anthony L. Viola   ID # 32238-160
McKean FCI - P.O. Box 8000
Bradford, Pa.  16701

RECEIVED

FEB 1 1 2016                    February 5, 2016

Clerk of Courts.
U.S. District Court, N.D.

Clerk of Court
United States District Court
801 West Superior Avenue
Cleveland, Ohio  44113

        RE:  USA v. Anthony Viola; CR-08-506

Dear Sirs:

     I am respectfully requesting a copy of ECF # 117, "conflict hearing"
concerning the matter captioned above.  I'm also enclosing a copy of a
letter I forwarded to the court reporter.  Kindly let me know how much
the transcript costs and funds will be immediately sent.

     In addition, the AUSA in this case, Mark Bennett, has stated that
a conflict waiver was executed.  I do not see any conflict waiver on
the court's case docket.  Can you confirm in writing that:

     (1)  A conflict waiver was filed and added to the record and let
          me know how I can obtain that; or

     (2)  State in writing no such waiver is on this record.

     Thank you very much for your prompt response to this important
request.

*No Such waiver part            Respectfully Submitted,
of Record. Thank you.           Tony Viola
USDC-Clerk's Office             Tony Viola

cc:  Mr. Roy Ford - United States Court of Appeals - Sixth Circuit

     Mr. Mark Bennett - United States Attorney's Office

Exhibit -9-02



**U.S. Department of Justice**

*United States Attorney*
*Western District of Pennsylvania*

---

Joseph F. Weis Jr. U.S. Courthouse
700 Grant Street
Suite 4000
Pittsburgh, Pennsylvania 15219

412/644-3500

September 27, 2019

The Honorable Susan Paradise Baxter
United States District Judge
U.S. Courthouse
17 South Park Row, Room A-240
Erie, PA 16501

RE: **Anthony L. Viola v. USDOJ FBI, et al.**
   Civil Action No. 15-242E

Dear Judge Baxter:

In June 2018, the Court granted summary judgment to the federal defendants in this Freedom of Information Act case, the Federal Bureau of Investigation (FBI) and Executive Office for U.S. Attorneys (EOUSA). The plaintiff, Anthony L. Viola, appealed that ruling to the U.S. Court of Appeals for the Third Circuit, where the appeal remains pending.

In the course of preparing the government's brief on appeal, government counsel discovered that the *Vaughn* index that EOUSA prepared and the government filed with this Court incorrectly described some of the documents at issue. The government has now moved in the Third Circuit to vacate this Court's judgment in favor of EOUSA and remand for further proceedings—in which EOUSA will reprocess the documents at issue and submit a new *Vaughn* index and declaration—once the Third Circuit has resolved the remaining issues in the appeal.

exhibit H- P1

September 27, 2019
Page 2

      Because the Third Circuit appeal remains pending, this Court presently lacks jurisdiction, and the government does not ask that the Court take any action at this time.  The government is filing this letter simply to avoid any delay in notifying the Court of the inaccuracies in EOUSA's prior submission.  The government regrets those inaccuracies and the resulting inconvenience to the Court.

                Respectfully submitted,

                SCOTT W. BRADY
                United States Attorney

                */s/ Michael C. Colville*
                MICHAEL C. COLVILLE
                Assistant U.S. Attorney
                (412) 894-7337

exhibit H - p2

## AFFIDAVIT OF CHRISTA A. DIMON

**STATE OF OHIO**
**COUNTY OF FRANKLIN:**

The undersigned, **CHRISTA A. DIMON**, being duly sworn, hereby deposes and says:

1. I am over the age of 18 and am a resident of the State of Ohio. I have personal knowledge of the facts herein, and if called as a witness, could testify completely thereto.

2. I am an attorney in good standing licensed to practice in The State of Ohio, bar number 0029910.

3. I am currently employed by The Office of the Ohio Attorney General. I am a Principal Attorney assigned to the Ohio Organized Crime Investigations Commission. (OOCIC)

4. On September 26, 2007, OOCIC formed Task Force #08-01 which was established as a Mortgage Fraud Task Force to investigate organized criminal activity in Cuyahoga County, Ohio.

5. The establishment of Task Force #08-01 was governed by the terms set forth in a MOU, attached hereto as Exhibit A.

6. As provided in the attached MOU, the funding of Task Force #08-01 was the joint responsibility of OOCIC and the Ohio state and/or local participating agencies/departments. (See page 3) and no federal funding was utilized in the creation of or the maintaining of Task Force #08-01.

Executed on this 19th day of April, 2017.

_____
**Christa A. Dimon**

**State of Ohio**
**County of Franklin**

On the 19th day of April 2017 before me, the undersigned notary public, personally appeared **Christa A. Dimon**, personally known to me and acknowledged that she did sign the foregoing Affidavit, and being first duly sworn on oath according to law, deposes and says she has read the foregoing Affidavit subscribed by her and that the matters stated herein are true to the best of her knowledge and belief.

Witness my hand by _Christa A. Dimon_ before me on, this 19th day of April, 2017, Franklin County, Ohio

_Cynthia K. McCreary_
Notary Public _Cynthia K. McCreary, Notary Public_
_My Commission expires 8-15-2020_

EXHIBIT I - 0.1

# Bureau of Justice Assistance

**Award Title:** Recovery Act Grant Program

**Award Description:**

The Recovery Act Edward Byrne Memorial Competitive Grant Program (Byrne Competitive Program) will help communities improve the capacity of state and local justice systems and provide for national support efforts including training and technical assistance programs strategically targeted to address local needs. This competitive grant announcement focuses on initiatives in eight areas: 1) preventing and reducing violent crime through community-based data-driven approaches; 2) providing funding for neighborhood-based probation and parole officers; 3) reducing mortgage fraud and crime related to vacant properties; 4) hiring of civilian support personnel in law enforcement (training staff, analysts, dispatchers, etc.); 5) enhancing forensic and crime scene investigations; 6) improving resources and services for victims of crime; 7) supporting problem-solving courts; and 8) national training and technical assistance partnerships.

Under category 3, the Cuyahoga County Prosecutor's Office will use the grant to increase their number of law enforcement partners and expand their efforts to aggressively investigate and prosecute fraudulent mortgages within Cuyahoga County. The Cuyahoga County Prosecutors Office convened the Cuyahoga County Mortgage Fraud Task Force in January 2007. Since 2007, the Cuyahoga County Prosecutors Office has indicted 219 defendants for their involvement in fraudulent loans (totaling more than $55 million), taken on 353 homes. Of the 353 home loans under investigation, 252 of the houses (71 percent) have fallen into foreclosure. The task force is comprised of 12 federal, state, and local law enforcement agencies. The grant funds will be used to hire three additional full-time employees. The increased capacity provided by adding staff is expected to result in criminal indictments being brought against an additional 250 defendants for fraudulent mortgages by the end of the 24-month grant cycle.

CA/NCF

| | |
|---|---|
| **Awardee Name:** Cuyahoga County Prosecutors Office | **Award Number:** 2009-SC-B9-0080 |
| **Solicitation Title:** BJA FY 09 Recovery Act Edward Byrne Memorial Competitive Grant Program: Reducing Mortgage Fraud and Crime Related to Vacant Properties | **Fiscal Year:** 2009 |
| **Supplement Number:** 00 | **Amount:** $279,950.00 |
| **Earmark:** No | **Recovery Act:** Yes |
| **State/Territory:** OH | **County:** Cuyahoga |
| **Congressional District:** 11 | **Award Status:** Closed |

exhibit I - 02

7/1/2016                                    FBI — Three Charged in Mortgage Fraud Scheme



## *Cleveland Division*

Home · Cleveland · Press Releases · 2010 · Three Charged in Mortgage Fraud Scheme

### Three Charged in Mortgage Fraud Scheme

| | |
|---|---|
| **U.S. Attorney's Office** | **Northern District of Ohio** |
| February 23, 2010 | (216) 622-3600 |

Steven M. Dettelbach, United States Attorney for the Northern District of Ohio, announced that an information has been filed charging Anthony Capuozzo, Nicholas Myles, and Kathryn Clover with two counts of conspiracy. According to court records, Anthony Capuozzo, age 39, currently resides in Concord, Ohio; Nicholas Myles, age 38, currently resides in Mayfield, Ohio; and Kathryn Clover, age 30, currently resides in Olmsted Falls, Ohio.

The information alleges that during the period from about June 2005 through April 2006, Capuozzo, Myles, and Clover conspired with previously indicted defendants Uri Gofman, Anthony Viola, Gennadiy Simkhovich, Dave Pirichy, Howard Sieferd, Jr., Noah Bloch, and Paul A. Lesniak to purchase 34 properties in the Cleveland area for over $2 million, of which 15 properties were purchased in Clover's name and 19 properties were purchased in Lesniak's name. The information further alleges that as part of their conspiracy, Clover and Lesniak completed and submitted false and fraudulent loan applications with the assistance of Myles and Pirichy, mortgage brokers for Central National Mortgage, LLC. The applications falsified employment, overstated income, overstated assets, falsified intent to occupy the property and concealed the source of the down-payment funds, which were in fact provided by Uri Gofman and Gennadiy Simkhovich through their company, Real Asset Fund, LLC, in order to obtain the financing to purchase the properties. The information alleges that Capuozzo, a licensed title agent through the State of Ohio and an owner of Family Title Service, Inc. and Howard Sieferd, Jr., an employee of Family Title, served as the title agency on the properties and conspired with defendants Uri Gofman, Anthony Viola and Gennadiy Simkhovich to allow the mortgage loan proceeds to be fraudulently and improperly distributed. The information alleges that the defendants did all of this in order to deceive and defraud Long Beach Mortgage Company, Argent Mortgage Company, LLC, and Mortgage IT, Inc. into funding the mortgage loans.

The defendants' sentences will be determined by the court after review of factors unique to this case, including the defendants' prior criminal records, if any, each defendant's role in the offense, and the characteristics of the violation. In all cases the sentences will not exceed the statutory maximum and in most cases it will be less than the maximum.



This case is being prosecuted by Assistant United States Attorney Mark S. Bennett, following an investigation by the Cleveland Divisions of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the Federal Bureau of Investigation (FBI), and in conjunction with the Cuyahoga County Mortgage Fraud Task Force.

United States Attorney Steven M. Dettelbach stated that "Mortgage fraud has had a devastatingly negative impact on our community and, unfortunately, is continuing to happen. Our office has committed that one of our top priorities, along with our law enforcement partners, is to find and prosecute the perpetrators of mortgage fraud in order to eliminate it."

An information is only a charge and is not evidence of guilt. Defendants are entitled to a fair trial in which it will be the government's burden to prove guilt beyond a reasonable doubt.

This content has been reproduced from its original source.

Accessibility | eRulemaking | Freedom of Information Act | Legal Notices | Legal Policies and Disclaimers | Links | Privacy Policy | USA.gov | White House

FBI.gov is an official site of the U.S. government, U.S. Department of Justice

Close

**Cleveland Division Links**

Cleveland Home

Contact Us
- Overview
- Territory/Jurisdiction

News and Outreach
- Press Room | Stories
- In Your Community

About Us
- Our People & Capabilities
- What We Investigate
- Our Partnerships
- Cleveland History

Wanted by the FBI - Cleveland

FBI Jobs

EXHIBIT J - p.3



U.S. Department of Justice

*United States Attorney*
*Northern District of Ohio*

United States Court House
801 West Superior Avenue, Suite 400
Cleveland, Ohio 44113-1852

August 9, 2013

Anthony L. Viola #32238160
Ashland Federal Correctional Institution
P.O. Box 6001
Ashland, Kentucky 41105

    Re: <u>United States v. Viola</u>, et al. 1:08CR506

Dear Mr. Viola:

This office is in receipt of your letters of March 31, 2013 and April 15, 2013. We have reviewed your allegations that members of a "joint state-federal Mortgage Fraud Task Force" engaged in "significant misconduct." Based upon our review of your allegations, this office will take no further action.

Very truly yours,

Steven M. Dettelbach
United States Attorney

EXHIBIT J